Todd Blanche
Deputy Attorney General of the United States
S. Peter Serrano
First Assistant United States Attorney
Eastern District of Washington
Lisa C. Cartier Giroux
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 1 6 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

              Plaintiff,

          v.

CRANDALL SOLOMON,

              Defendant.

Case No.: 2:25-CR-00104-RLP

Plea Agreement

Plaintiff United States of America, by and through Lisa C. Cartier Giroux, Assistant United States Attorney for the Eastern District of Washington, and Defendant Crandall Solomon ("Defendant"), both individually and by and through Defendant's counsel, Deputy Federal Defender Amy Rubin, agree to the following Plea Agreement.

    1.    <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to enter a plea of guilty to Count 1 of the Indictment filed on June 18, 2025, which charges Defendant with Felon in Possession of Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), a Class D felony.

Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 1

a. a term of imprisonment of not more than 15 years;

b. a term of supervised release of not more than 3 years;

c. a fine of up to $250,000; and

d. a $100 special penalty assessment.

2. Supervised Release

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c. 2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a. sentencing is a matter solely within the discretion of the Court;

PLEA AGREEMENT - 2

b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

a. pleading guilty in this case may have immigration consequences;

b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

PLEA AGREEMENT - 3

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a.    the right to a jury trial;

    b.    the right to see, hear and question the witnesses;

    c.    the right to remain silent at trial;

    d.    the right to testify at trial; and

    e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    Admissibility of Facts and Prior Statements

By signing this Plea Agreement, Defendant admits the truth of the facts set forth in the Factual Basis section of this Plea Agreement and agrees that these facts, along with any written or oral statements Defendant makes in court, shall be deemed usable and admissible against Defendant in any subsequent legal proceeding, including criminal trials and/or sentencing hearings, under Federal Rule of Evidence 801(d)(2)(A).

PLEA AGREEMENT - 4

Defendant acknowledges, admits, and agrees that by signing this Plea Agreement, Defendant is expressly modifying and waiving Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to any facts Defendant admits and/or any statements Defendant makes in court.

7. Elements of the Offense

The United States and Defendant agree that to convict Defendant of Felon in Possession of Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), the United States would have to prove the following beyond a reasonable doubt.

    a. *First*, on or about November 14, 2024, in the Eastern District of Washington, Defendant did knowingly possess a firearm, to wit: a Taurus G2C 9mm caliber pistol bearing serial number ABB332007 or 9mm caliber ammunition;

    b. *Second*, the firearm or ammunition had been shipped from one state to another;

    c. *Third*, at the time Defendant possessed the firearm or ammunition, he had been convicted of a crime punishable by imprisonment for a term exceeding one year; and

    d. Fourth, at the time Defendant possessed the firearm or ammunition, Defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

8. Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

PLEA AGREEMENT - 5

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

*November 2024 Contact*

On November 14, 2024 at approximately 8:20 am, an Airway Heights patrol officer was doing traffic enforcement at S. Campbell Street and W. 18th Ave. in Airway Heights in the Eastern District of Washington. He observed a white Cadillac Deville with temporary Washington State license plate A7915853, parked in an area on W. Frank Street known to the officer for pervasive drug possession and trafficking. As the vehicle left, it passed the officer heading northbound on S. Campbell Street towards W. Highway 2. At the intersection of W. Highway 2 and S. Campbell Street, the vehicle turned westbound onto the highway and did not use a turn signal, in violation of Washington law. The officer stopped the vehicle and contacted the Defendant, the sole occupant and driver of the vehicle. The officer informed him that he was being recorded on body worn camera and explained that the reason for the stop was that he failed to use his turn signal, which Defendant did not deny. As the officer was speaking with Defendant, he could smell the odor of illegal narcotics coming from inside the vehicle, specifically an odor that the officer believed based on his training and experience to be that of smoked fentanyl. Defendant did not have a driver's license but provided a paper from the WA Department of Licensing showing he had applied for one. Defendant was also the registered owner of the vehicle.

Due to the suspected odor of narcotics, the officer asked a K9 officer to run his narcotics K9 on the vehicle. The officer informed Defendant that he could smell the odor of narcotics and asked him if there were any narcotics in the vehicle. Defendant stated there were no controlled substances in the vehicle. The officer asked Defendant to step out of the vehicle while his partner ran his K9 dog

PLEA AGREEMENT - 6

on the car. Before stepping out of the car, Defendant rolled up all his windows. To the officer, this was unusual behavior, and he then suspected that Defendant was attempting to shield the odor of narcotics from the K9, who would be conducting the sniff from the exterior of the vehicle. Once at the back of the patrol vehicle, Defendant closely watched what the K9 was doing and asked the officer if the dog was going to go inside of the vehicle and he appeared concerned about the possibility of this. Seeing the condition of the interior of the vehicle, the officer did not believe Defendant was worried about the dog getting the car dirty. The officer informed Defendant that the K9 would not enter the vehicle and would only be run on the outside of it. Once the K9 officer was finished, he informed Defendant that his K9 showed a change of behavior and asked what he had in the vehicle. Defendant again denied any narcotics inside. Defendant was asked for consent to search the vehicle; Defendant denied consent. The officers then informed Defendant that they would be seeking a search warrant for the vehicle. Defendant then began to quickly leave the area without asking any further questions. The officer had to call him back and ask for a good phone number for him so he could call Defendant after the search was completed in the event the vehicle was to be returned to him.

After Defendant left the area, a search warrant was obtained for the vehicle. During the search, officers recovered a scale in the back seat of the car and two baggies of illegal narcotics under the front driver side seat. One bag contained blue and pink pills that were stamped "M3", later confirmed by the DEA Lab to be counterfeit oxycodone pills containing fentanyl. There were 63 pills in the bag with confirmed fentanyl in the amount of 6.8 grams (DEA Exhibit 1B7). The other bag contained a white chalky powder later confirmed to be 1.062 g of cocaine hydrochloride (DEA Exhibit 1B4).

Along with the controlled substances and scale, numerous unused baggies were also located throughout the vehicle. These baggies were a clear Ziplock style

PLEA AGREEMENT - 7

commonly used for the packaging and sale of narcotics. The baggies were unused, in bulk packaging, and still connected showing that they had not yet been filled with controlled substances.

While searching the center console, officers located a black Taurus G2C 9mm handgun, bearing serial number ABB332007. The search was stopped at this point, the car resealed with new evidence tape, photos taken again, and officers amended the warrant to seize the gun. A second amended search warrant was written for a cellular phone located in the vehicle after officers saw several messages come through requesting to meet up. The warrant was amended to search the contents of the phone[1].

*January 2025 Contact*

On January 19, 2025 at approximately 2:30 pm, an Airway Heights patrol officer saw a 2004 White Cadillac Deville bearing a Washington license plate CRA6790 parked in the same known high drug traffic area on W. Frank Street in Airway Heights in the Eastern District of Washington. The officer knew the vehicle belonged to Defendant from previous contacts and the search warrants conducted on Defendant's vehicle. Defendant was observed by the officer outside of the vehicle, about 150 feet away from the officer. The officer, however, was able to confirm Defendant's identity with binoculars. The officer checked Defendant's name on his mobile data terminal and saw Defendant had a warrant for his arrest out of Airway Heights Municipal Court for 3 counts of possession of a controlled substance from the November 14th encounter.

Defendant was observed with four other individuals. The officer decided to wait for Defendant to leave the area before making contact as he was alone, and he would then not have as many unknown individuals involved in the contact with Defendant. The officer did contact another Airway Heights Police Department

---

[1] Spokane County investigators were unable to unlock the phone and retrieve any information from the cell phone.

PLEA AGREEMENT - 8

officer and asked him to set up on S. Russell St. and South of W. Frank Street in case Defendant left eastbound from the location. Defendant did enter his vehicle and left the area, and the officer then positioned himself behind Defendant's vehicle on S. Russell Street and initiated a traffic stop on W. 19th Ave and S. Russell Street. Once stopped, Defendant immediately got out of his vehicle and began to approach the officer while yelling. The officer told Defendant to stop and turn around as he was under arrest for an outstanding warrant, which the officer had already confirmed and held with dispatch. Defendant then complied and was placed under arrest.

Once Defendant was in custody, the officers went over to the vehicle where Defendant's wife, Latonya Lovelace, was still inside. The officer knew Lovelace had an arrest warrant which was confirmed. She was searched incident to arrest and in her front right pant pocket, a hollow point 9mm Hornaday bullet was located. She was asked why she had the bullet, and she claimed that she found it on the ground.

Defendant was read his *Miranda* rights and consented to speak to the officer. The officer asked Defendant about the bullet that was found in Lovelace's pocket. Defendant became upset about the discovery of the bullet and went back and forth in his story as to whether the gun was his or Lovelace's. In the end he stated that she had too much to lose and stated the firearm was his. The officer asked Defendant where the gun was, and Defendant stated it was in the glovebox but the glovebox was broken and officers would not be able to open it.

After asking about the bullet, Defendant asked if the officer was recording the conversation on his body camera. The officer informed him that it was being recorded, and Defendant wanted to speak to him off camera. The officer did not feel comfortable turning off his camera but agreed to mute it so he could talk more freely about whatever it was that he was concerned about. Defendant then told the officer that it was his gun in the car. The officer then asked him once more if there

PLEA AGREEMENT - 9

were any illegal narcotics in the car. Defendant then went back and forth on his answers by first stating that there were no drugs in the vehicle and then telling him there was powder and pills. The officer asked Defendant about where he obtained the firearm. Defendant stated that he was approached by someone and offered to buy a gun from them.

After Defendant was booked into the Spokane County Jail, the officer submitted and was granted a search warrant for the vehicle. During the search, officers seized a meth pipe under the passenger side seat with methamphetamine residue inside. They also seized a small silver container that was attached to Defendant's keys. The container unscrewed and inside was a white powdery residue consistent with fentanyl powder and the lid had a small spoon attached to it for scooping the narcotics out. In the back seat was a black backpack which had 2 operational electronic scales. One scale was brand new and had no residue. The second scale was covered in a white powdery residue consistent with powdered fentanyl. This residue was inside the container that held the scale, on the lid of the scale, and had small piles of powder on the scale itself.

In the glovebox officers located a Kel-Tec 9mm handgun. The firearm had a full magazine containing seven hollow point bullets. The bullets were the same Hornaday 9mm Hollow Points that were found in Lovelace's pocket. The gun was not chambered. Officers attempted to check the serial number on the firearm to see if it was stolen, however, it was altered/obliterated and could not be read[2].

Defendant stipulates and agrees that the firearms recovered and all rounds of 9mm ammunition were manufactured outside of the State of Washington and in order to be located on November 14, 2024 and January 19, 2025, they would have travelled in interstate or foreign commerce.

---

[2] Defendant did state that he believed the gun could be stolen. However, with the unreadable serial number, law enforcement cannot confirm.

PLEA AGREEMENT - 10

Defendant further stipulates and agrees that at the time Defendant possessed the firearm and ammunition, Defendant was previously convicted of a crime punishable by imprisonment for a term exceeding one year, and he knew that he had been convicted of such a crime.

All of the foregoing occurred in the Eastern District of Washington.

9. The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss Counts 2 and 3 of the Indictment which charge Defendant with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count 2), and Felon in Possession of Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Count 3).

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

The parties understand that in Spokane County case number 25-1-10009-32, Defendant will plead guilty to Assault 4 (gross misdemeanor) and the Spokane County Deputy Prosecutor will recommend a time served sentence with Defendant's agreement to a five year no contact order. Spokane Case number 25-1-10131-32 will be dismissed after Defendant is sentenced in federal court in the federal indictment.

10. United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

PLEA AGREEMENT - 11

a.    *Base Offense Level*

The United States and the Defendant agree that the base offense level is 14 as Defendant was prohibited at that time of possession of the firearm and ammunition.  USSG §2K1.1(a)(6).

b.    *Special Offense Characteristics*

The United States and Defendant agree that Defendant's base offense level is increased by 4 levels because the offense involved a firearm (the Kel-Tec 9mm) where the serial number was obliterated.  USSG §2K2.1(4)(B)(i).

The United States and Defendant agree that Defendant's base offense level is increased by 4 levels because Defendant possessed the firearm in connection with another felony offense, possession with intent to distribute a controlled substance.  USSG §2K2.1(7)(B).

c.    *Acceptance of Responsibility*

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is

PLEA AGREEMENT - 12

charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

        d.    *Agreements Regarding Representations to the Court*

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

    i.    The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

    ii.    The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

    iii.    The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

    iv.    The United States and Defendant may each present and argue information that may already be known to the

PLEA AGREEMENT - 13

Court, including information contained in the Presentence Investigation Report;

v. The United States and Defendant may each respond to any arguments presented by the other;

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii. The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set

PLEA AGREEMENT - 14

forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

    ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

    e.    *No Other Agreements*

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

    f.    *Criminal History*

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

11.   <u>Incarceration</u>

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what

PLEA AGREEMENT - 15

positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

The United States agrees to recommend the low end of the Guidelines, as calculated by the United States. Defendant may recommend any legal sentence.

12.    Supervised Release

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

c.    Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

PLEA AGREEMENT - 16

13.    Judicial Forfeiture and Abandonment

Defendant agrees to voluntarily forfeit and relinquish all right, title and interest he has in the following listed assets to the United States:

- a Taurus G2C, 9mm pistol, bearing serial number ABB332007 and 9mm caliber ammunition

Defendant acknowledges that the assets listed above is subject to forfeiture to the United States pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), as property involved or used in the commission of the offense Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), to which Defendant is pleading guilty.

Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding. Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure, abandonment, or forfeiture of any asset covered by this agreement.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets the Defendant is agreeing to forfeit in this Plea Agreement. Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the assets. Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

Abandonment

Defendant agrees to abandon to the Federal Bureau of Investigation (FBI) the following listed assets, including but not limited to:

PLEA AGREEMENT - 17

- a Kel Tec, 9mm caliber pistol, with an altered and obliterated serial number, and 9mm caliber ammunition

Defendant agrees to take all steps as requested by the United States and FBI to effectuate the abandonment of the assets to FBI and hereby agrees to execute any and all forms and pleadings necessary to effectuate such abandonment.

Defendant consents to the disposal, including destruction of the assets. Defendant agrees to hold all law enforcement agents/officers, and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and abandonment of any asset covered by this agreement.

Defendant waives any right he might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the United States and/or FBI might take, in their sole discretion, to carry out the abandonment, disposition, and destruction of the assets. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the assets, including any such claim for attorney fees and litigation costs.

14.   Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

//

//

//

PLEA AGREEMENT - 18

15.    Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

16.    Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17.    Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18.    Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives any and all of Defendant's rights to appeal any and all aspects of Defendant's conviction and any and all aspects of the sentence the Court imposes, on any and all grounds.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

PLEA AGREEMENT - 19

Defendant expressly waives Defendant's right, even if otherwise authorized by the United States Constitution or federal law, to challenge in the district court, to move to withdraw Defendant's plea based on, or to appeal the validity and/or entry of, any and all charging instruments, any and all plea agreements, any and all pleadings, any and all communications between any and all defense counsel and any and all Assistant United States Attorneys, and/or any and all guilty pleas in the above-captioned matter based on any and all arguments that the United States, the United States Attorney's Office for the Eastern District of Washington, the Deputy Attorney General, any and all First Assistant United States Attorneys for the Eastern District of Washington, any and all Criminal Chiefs for the United States Attorney's Office for the Eastern District of Washington, any and all Assistant United States Attorneys for the Eastern District of Washington, and/or any and all attorneys for the government, are in any way unauthorized to bring, seek, file, and/or resolve any and all aspects of the above-captioned matter, case, and/or charges.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

      a.     Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

      b.     The United States may prosecute Defendant on all available charges;

PLEA AGREEMENT - 20

    c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.    The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20.    <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

//

//

//

PLEA AGREEMENT - 21

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

_____ 12/16/2025
Lisa C. Cartier Giroux                    Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____ 12/16/25
Crandall Solomon                    Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's

PLEA AGREEMENT - 22

decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          12/16/25
Amy Rubin                                          Date
Attorney for Defendant

PLEA AGREEMENT - 23